# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

BEVERLY TAYLOR, )
 )
          Plaintiff, )
 )
v. ) Case No. CIV-09-316-HE
 )
MICHAEL J. ASTRUE, )
COMMISSIONER OF THE SOCIAL )
SECURITY ADMINISTRATION, )
 )
          Defendant. )

## REPORT AND RECOMMENDATION

Plaintiff, Beverly Taylor, seeks judicial review of a denial of supplemental security income benefits (SSI) by the Social Security Administration. This matter has been referred for proposed findings and recommendations. *See* 28 U.S.C. § 636(b)(1)(B) and (C). It is recommended that the Commissioner's decision be reversed and remanded for further proceedings consistent with this Report and Recommendation.

## I.     Procedural Background

Ms. Taylor filed her application for SSI on April 11, 2005, and the Social Security Administration denied the application initially and on reconsideration. Following a hearing, an Administrative Law Judge (ALJ) issued an unfavorable decision. *See* Administrative Record [Doc. #12] (AR) at 10-23. The Appeals Council denied Ms. Taylor's request for review. AR 3-5. This appeal followed.

## II. The ALJ's Decision

The ALJ followed the sequential evaluation process required by agency regulations. *See Fisher-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. § 416.920. The ALJ first determined that Ms. Taylor had not engaged in substantial gainful activity at any time relevant to the decision. AR 15. At step two, the ALJ determined that Ms. Taylor has severe impairments including schizoaffective disorder, general anxiety disorder and fractured ankle with fusion. AR 15. At step three, the ALJ found that Ms. Taylor's impairments do not meet or medically equal any of the impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 15.

> The ALJ next determined Ms. Taylor's residual functional capacity (RFC):
>
> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a limited range of sedentary work. She can occasionally lift and/or carry (including upward pulling) 10 pounds and frequently lift and/or carry (including upward pulling) less than 10 pounds. She can stand and/or walk (with normal breaks) for 2 hours of an 8-hour workday and sit (with normal breaks) for 6 hours of an 8-hour workday. Pushing and/or pulling (including operation of hand and/or foot controls) is unlimited up to the pounds specified above. Her residual functional capacity for sedentary work is diminished by significant nonexertional limitations, in that she has postural limitations of occasionally climbing, balancing, stooping, kneeling, crouching and crawling. She can understand and perform simple and some complex tasks with routine supervision; can interact appropriately with others at a superficial level, but not the general public; and can adapt to a work situation.

AR 16. At step four, the ALJ concluded that Ms. Taylor cannot perform her past relevant work as convenience store cashier or nurse's aide because she cannot meet the demands of these jobs. AR 21. At step five, however, the ALJ determined that a significant number of

jobs exist in the national economy that Ms. Taylor can perform, including touch-up screener, addressing clerk, and polisher. AR 21-22.

### III. Standard of Review

Judicial review of the Commissioner's final decision is limited to determining whether the factual findings are supported by substantial evidence in the record as a whole and whether the correct legal standards were applied. *See Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (quotation omitted). A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it. *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004). The court "meticulously examine[s] the record as a whole, including anything that may undercut or detract from the [administrative law judge's] findings in order to determine if the substantiality test has been met." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (citations omitted). While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quotations and citations omitted).

## IV. Analysis

Ms. Taylor contends that the ALJ erred in failing to resolve a conflict between the findings of the State agency consultant and the assessments of her mental health treating physician. Specifically, Ms. Taylor challenges the ALJ's wholesale reliance on the Mental Residual Functional Capacity Assessment (MRFC) and the Psychiatric Review Technique form (PRT) completed by a non-examining consultant, Sharon Taber, Ph. D., and the ALJ's apparent failure to consider the opinions of Ms. Taylor's treating physician as expressed in global assessment of functioning (GAF) scores. According to Ms. Taylor, the ALJ's failure to discuss the GAF scores assessed by her treating physician runs afoul of the treating source rule. Plaintiff's Brief [Doc. #14] at 9. Ms. Taylor further contends that, to the extent the records submitted by Ms. Taylor's treating physician are ambiguous because of the sparsity of his notes, the ALJ had a duty to recontact Ms. Taylor's treating physician for the purpose of acquiring more information. *Id.* at 10-11.

The Commissioner argues that Ms. Taylor's challenge to the ALJ's decision focuses on the low GAF scores contained in the treatment records but ignores the GAF score of 65 assessed by Dr. Amal Chakraburtty, a consultative examining physician, on September 10, 2005. Social Security Response Brief [Doc. #15] at 10. Further, the Commissioner argues, an ALJ does not have a duty to discuss every piece of evidence. Finally, the Commissioner states that an ALJ is not required to discuss a GAF score in his written decision "as long as it is clear that he considered and evaluated the various assessments of Plaintiff's overall functioning." *Id.* at 10. The Commissioner's statements of the law are correct. Here,

4

however, it is not clear that the ALJ considered and evaluated the various assessments of Plaintiff's overall functioning.

A global assessment of functioning (GAF) score "is a subjective determination based on a scale of 1 to 100 of the clinician's judgment of the individual's overall level of functioning." *Salazar v. Barnhart*, 468 F.3d 615, 624 n. 4 (10th Cir. 2006) (*citing* American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders (Text Revision 4th ed. 2000) (DSM-IV) at 32). The higher the GAF score, the better the individual's psychological, social, and occupational functioning is judged to be. "A GAF score of 41-50 indicates '[s]erious symptoms . . . [or] serious impairment in social, occupational, or school functioning,' such as inability to keep a job." *Langley v. Barnhart*, 373 F.3d 1116, 1122 n. 3 (10th Cir. 2004) (*citing* DSM- IV at 34). A GAF score of 51-60 indicates "moderate symptoms," such as a flat affect, or "moderate difficulty in social or occupational functioning." DSMV-IV at 34. A GAF score of 65 "falls within the middle of the range indicating '[s]ome mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships.'" *Pisciotta v. Astrue*, 500 F.3d 1074, 1079 (10th Cir. 2007) (*citing* DSM-IV-TR, at 34). While a GAF score, standing alone, "does not necessarily evidence an impairment seriously interfering with a claimant's ability to work," *Lee v. Barnhart*, 117 Fed. Appx. 674, 678 (10th Cir. Dec. 8, 2004) (unpublished op.), "[a] GAF score of fifty or less . . . does suggest an inability to keep a job." *Id.*

In this case, the ALJ cited the findings on an initial intake evaluation from North Care Center dated March 23, 2005. Although the ALJ noted Ms. Taylor's complaint of daily major depression, part of his summary focused on what he apparently perceived as either inconsistent statements made by Ms. Taylor, or statements that were not borne out by the clinician's reported observations. The ALJ noted that Ms. Taylor "appeared to be overweight but complained of loss of appetite," that she "appeared to be well dressed with good hygiene but stated she was unable to meet her basic self-care needs, such as bathing, and brushing her hair and teeth," and further that "she stated her most current use of alcohol was in 1989, but she also reported she was currently using alcohol on weekends." AR 18.[1] The ALJ did not mention or discuss the significance of the clinician's judgment of Ms. Taylor's overall functioning as expressed in the GAF score of 45. AR 18.

On June 7, 2005, Ms. Taylor's treating physician assessed her overall functioning with a GAF score of 50. Plaintiff was still suffering the symptoms of major depressive disorder, generalized anxiety disorder, and compulsive hair pulling (trichotillomania) that left bald spots in places on her head. AR 252-254. The ALJ again did not discuss or even mention the treating physician's assessment of Ms. Taylor's GAF score. AR 19.

---

[1]Alcohol abuse is not an issue in this case. Nevertheless, six pages of the hearing transcript are devoted to the ALJ's questioning Ms. Taylor about inconsistent statements regarding use of alcohol. AR 385-390. About her recent drinking, Ms. Taylor declared, "It's not alcohol really. It's beer. I drink beer, you know, occasionally." AR 390. The ALJ then asked, "Oh, and so beer doesn't count," *id.*, which led to her reply, "Yeah, it counts. It's, it has alcohol in it so yeah." *Id.*

On September 10, 2005, Dr. Amal Chakraburtty examined Ms. Taylor and prepared a Social Security Disability Evaluation Report. Dr. Chakraburtty diagnosed Ms. Taylor with major depressive disorder, recurrent, mood disorder, secondary to general medical condition, alcohol dependence in extended remission and personality disorder, not otherwise specified. Dr. Chakraburtty also noted Ms. Taylor's chronic ankle pain and swelling, as well as problems with primary support system, social environment, employment, economy and health. Although he assessed her GAF score at "about 65" for that day, he assessed her GAF score for the last year as 45, a score consistent with those assessed by Ms. Taylor's treating physician. AR 218. Despite the relatively high GAF score on the day of her examination, Dr. Chakraburtty stated that Ms. Taylor met the DSM-IV criteria for Major Depression which he "more precisely" described as "double depression (Major Depression superimposed on Dysthymia)." AR 218.

On March 2, 2006, Dr. Sharon Taber, a non-examining source, completed a Psychiatric Review Technique form and a Mental Residual Functional Capacity Assessment. Dr. Taber opined that Ms. Taylor is moderately limited in her restriction of activities of daily living, moderately limited in maintaining social functioning, and moderately limited in maintaining concentration, persistence or pace. AR 272. Dr. Taber found Ms. Taylor to be moderately limited in her ability to understand and remember detailed instructions, moderately limited in her ability to carry out detailed instructions, and markedly limited in her ability to interact appropriately with the general public. AR 258-259. Dr. Taber summarized Ms. Taylor's MRFC:

7

> Clmt can understand and perform simple and some complex tasks w/routine supervision. She can interact appropriately w/others at a superficial level, but not the general public. She can adapt to a work situation.

AR 260. The ALJ adopted this summary verbatim in his findings of Ms. Taylor's mental RFC.

"[A]n ALJ is required to consider all of the claimant's medically determinable impairments, singly and in combination; the statute and regulations require nothing less" and a failure to do so "is reversible error." *Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006). An ALJ "may not ignore evidence that does not support his decision, especially when that evidence is significantly probative." *Briggs ex rel. Briggs v. Massanari*, 248 F.3d 1235, 1239 (10th Cir. 2001) (quotation omitted); *see also Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) ("[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss . . . significantly probative evidence he rejects."). Moreover, "[t]he opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all." *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004) (*citing* 20 C.F.R. § 404.1527(d)[2] and SSR 96-6p, 1996 WL 374180, at *2). The Tenth Circuit Court of Appeals has held that "[i]t is improper for the ALJ to pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."

---

[2]This regulation applies to applications for disability insurance benefits. The parallel regulation applicable to SSI applications is 20 C.F.R. § 416.927(d).

*Carpenter v. Astrue*, 537 F.3d 1264, 1265 (10th Cir. 2008) (*citing Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004)).

Under these standards, the ALJ's decision is legally flawed. The ALJ adopted the mental RFC assessment of Dr. Taber, a non-examining consultant, while ignoring significantly probative evidence that does not support his decision. On remand, the ALJ should consider and discuss all significantly probative evidence including GAF scores assessed by Ms. Taylor's treating medical sources.[3]

## RECOMMENDATION

It is recommended that the Commissioner's decision be reversed and remanded for further consideration consistent with this Report and Recommendation.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to file specific written objections to this Report and Recommendation. *See* 28 U.S.C. § 636 and Fed.R.Civ.P.72. Any such objections should be filed with the Clerk of the District Court by April  19th , 2010. The parties are further advised that failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

---

[3] The regulations require an ALJ to recontact a medical source when the evidence received from the medical source "is inadequate for [the ALJ] to reach a determination or a decision." 20 C.F.R. § 416.912(e). In this case, the Court need not decide whether the ALJ breached his duty by failing to recontact medical sources, because remand is required on other grounds. On remand, the ALJ will be afforded the opportunity to recontact any treating sources necessary to determine whether Ms. Taylor is disabled.

**STATUS OF REFERRAL**

This Report and Recommendation terminates the referral by the District Judge in this matter.

ENTERED this  29th  day of March, 2010.

*/s/ Valerie K. Couch*
VALERIE K. COUCH
UNITED STATES MAGISTRATE JUDGE